PER CURIAM:
Claimant brought this action to recover costs associated with water damage to its property which it alleges is due to respondent’s negligent maintenance of the drainage system along U.S Route 220 in Hampshire County. Respondent is at all times herein responsible for the maintenance of U.S. Route 220 in Hampshire County. The Court is of the opinion that respondent is liable in this claim for the reasons stated more fully below. Further, the Court held the record open in this claim to allow claimant ninety days from the date of the hearing to submit a written estimate of what it would cost to repair all damages in the basement of the church and to submit a written estimate of the costs associated with whatever corrective measures are needed to prevent additional flooding.
Marvin Chapel Church is located adjacent to U.S. Route 220 in Purgitsville, Hampshire Comity. It is a small, locally controlled congregational church. The church owns less than one-fourth an acre of frontage real estate along U.S. Route 220, which is titled in the name of the trustees.
U.S. Route 220 is a two-lane, asphalt road with a yellow center line and white lines on the edges. It is a north and south route. Marvin Chapel Church is located on the east side ofthe road. There is a stream which flows just south of the church and a parking lot on the north side of the church. Glen Hamric, the pastor of Marvin Chapel Ch urch, and Sudie Rinlcer, the Chairman of the Trustees were present and testified on behalf of Marvin Chapel Church. Pastor Hamric testified that he has been the pastor at the church for eight years. According to Pastor Hamric, the church has been located on Route 220 at least sixty to seventy years. He stated that the church building is very close to the road and that respondent probably owns the property almost to the front door of the church. He estimated that the paved portion of the road is approximately fifteen to twenty-five feet from the front of the church. Pastor Hamric testified that respondent performed some significant construction work on the road in front of the church when it straightened out some curves in the road near the church. Respondent also installed drainage ditches near the church and performed extensive work on the front and both sides of the church. The only location that was not worked on was behind the church. According to Pastor Hamric, after respondent performed this work, the church was in such a position in relation to the road that any water draining from U.S. Route 220 would flow onto the parking lot and into the basement of the church. He stated that the road was raised higher as a result of this work. He also estimated that the highway was moved between eight to ten feet away from the front of the church. In July 2002, the church began to have flooding problems in the basement. Respondent was notified about the flooding shortly after it occurred. In response, respondent sent a private contractor to install a new drainage system in hopes of resolving the flooding problem. The contractor began working on the project sometime in late September and continued until April 2003. Pastor Hamric testified that the contractor dug down to the footers in front of the church and installed a drainage line which ran from the front of the church and crossed over to the stream where the excess water was emptied. However, he stated that this new drainage line did not work properly and that claimant was still getting flooded every time there was a “heavy rain.” He stated that he has seen water flowing from the surface of the elevated road in front of the church across the berm onto the church parking lot and *91 into the basement. Further, he testified that there is nothing to stop the water from flowing towards the church and into the basement. He stated that the ground is contoured at this location to allow the water to drain to the stream which is just fifteen feet south of the church, but as it flows this direction, it also flows into the church basement. Pastor Hamric testified that there was no flooding at the church until after respondent’s work on U.S. Route 220.
Sudie Rinker also testified on behalf of claimant. Ms. Rinker is the Chairman of the Trustees at Marvin Chapel Church. She has held this position for three to four years and also during the time of the flooding. She testified that she has attended Marvin Chapel Church since 1974, and that she has never seen the church flood until after respondent’s construction work in My 2002. According to Ms. Rinker, the first flood occurred on a Saturday in the Summer of 2002. She and two other church members noticed the basement was flooded when they arrived at church the following day. She testified that there was approximately one and one-half inches of water in the kitchen and an inch of water in the classroom. However, she also testified that the water was probably higher the previous day because there was a ring around the wall approximately eight to ten inches high. It is Ms. Rinker’s opinion that the flooding has been caused by respondent’s failure properly to install the drain pipe and because of dirt, leaves, and debris clogging the drain and preventing the water from flowing through it. Further, Ms. Rinker stated that she has seen the church flooded between six to eight tunes from My 2002, to the present. In addition, she testified that she contacted respondent within a reasonable amount of time once she discovered that the new drainage ditch was not working, but no one responded to her complaint.
The flooding in the church caused significant damage to the basement including the wall paneling, carpet and sheet rock. Claimant submitted a repair estimate to the Court at the hearing of this matter for the damage to the carpet in the amount of $1,160.60. Further, claimant submitted a written estimate to the Court and counsel for respondent within ninety days of this hearing for the cost associated with adequately preventing further seepage of water into the church basement. The contractor hired by claimant proposed to place approximately fifty tons of asphalt with a “swell” with negative drainage from the church with one-hundred feet of four inch drain pipe. In addition, the contractor proposes to do all excavation, grading and cleanup, for a total cost of $ 11,535.00. Thus, claimant seeks a total award of $12,695.60
Claimant contends that respondent failed to provide a proper drainage system for excess water along the portion of U.S. Route 220, and further that respondent changed the nature of the road and adj acent property causing a large volume of water to flow onto claimant.
Respondent chose not to present any witnesses or evidence in this claim.
T o holdrespondent liable for damages caused by an inadequate drainage system, claimant must prove that respondent had actual or constructive notice of the existence of the inadequate drainage system and a reasonable amount of time to take corrective action. Orsburn v. Division of Highways, 18 Ct. Cl. 123 (1991); Ashworth v. Division of Highways, 19 Ct. Cl. 189 (1993).
In the present claim, the Court is of the opinion that claimant established that respondent knew or should have known that its construction work on and around U.S. Route 220 created an inadequate drainage system for water flowing from U.S. Route 220, and as a result this was the proximate cause of the damage to claimant’s property. The evidence also established that respondent had performed extensive construction work around the church and in the process U.S. Route 220 was raised significantly higher than *92 the church adj acent to it. This increased the amount of water drainage from the road onto the claimant’s property. In addition, the manner in which respondent left the berm and parking lot also contributed to an increase in the flow of water drainage from the road and into the church. The land was contoured such that water flowing to the stream just south of the church also flowed into the church. Further, claimant notified respondent that it was having flooding problems in a timely fashion. However, while respondent attempted to remedy the problem, it failed to take timely and adequate corrective measures to resolve the water drainage problem. Thus, the Court has determined that claimant herein may make a recovery for the damages proximately caused to its property in the amount of $1,160.60 for the carpet, and a recovery of $11,535.00 for the cost of hiring a contractor to repair the underlying drainage problem causing the flooding. Thus, claimant may make a total recovery of $12,695.60.
In accordance with the findings of fact and conclusions of law as stated herein above, the Court is of the opinion to and does malee an award to the claimant in this claim in the amount of $12,695.60.
Award of $12,695.60.